UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LUIS A. LEBRON                :
                              :         PRISONER
v.                            :   Case No.  3:01CV241 (CFD)
                              :
COMMISSIONER JOHN             :
ARMSTRONG, et al.             :

### RULING AND ORDER

The plaintiff, Luis Lebron ("Lebron"), filed this civil rights action pro se and in forma pauperis pursuant to 28 U.S.C. § 1915.  Lebron claimed a variety of constitutional violations arising from an incident which occurred while he was being transported in a Connecticut Correction Department van.  Lebron alleged that he was unlawfully sprayed in his eyes with mace by one of the defendant correction officers, and not treated for the resulting injuries in violation of the Eighth and Fourteenth Amendments.  On April 22, 2004, the court granted the parties' motion to dismiss this case[1] with prejudice in accordance with the parties' settlement agreement.[2]  Lebron now has filed motions both to set aside and to enforce the settlement, consolidate two cases and obtain review of court rulings issued in this case prior to settlement.

---

[1] On March 30, 2004, the court granted a similar motion in Lebron v. Armstrong, et al., 3:03cv1269 (EBB), filed in accordance with the same settlement agreement.

[2] On September 30, 2003, the court denied Lebron's motion for writ of mandamus.  Thereupon the Clerk entered judgment and closed this case.  Although a petition for writ of mandamus ordinarily is the operative document in a case seeking mandamus relief, that was not the case here.  Lebron had improperly sought mandamus relief in a motion filed in a pending case.  Lebron brought this situation to the court's attention in late January 2004.  While the court was reviewing the matter to determine whether to vacate the judgment and reopen the case, the parties entered into a settlement agreement.  Because the case had settled, the court did not reopen it.

I.        Motions to Set Aside and Enforce Settlement [docs. #71 & #89]

In his first motion, Lebron asks the court to set aside the settlement agreement because he has not been permitted to purchase eyeglasses tinted more than twenty percent.  He states that he believed when he agreed to settle that he would be allowed to obtain these eyeglasses.  He also argues that he agreed to settle under duress and without the advice of counsel.  Defendants oppose the motion and contend that the settlement agreement only provided for a monetary payment to Lebron and did not include any "property rights" (including authorization to obtain such eyeglasses) and that Lebron was fully aware of the terms of the settlement agreement.  In the second motion, filed on February 7, 2005, Lebron states that he would withdraw all pending motions if the defendants forwarded to him the agreed settlement amount of $2,000 within a certain time period.

In accordance with the settlement agreement, this case was dismissed with prejudice. (See Docs. #66 & 67.)  Such a dismissal operates as a final judgment for res judicata purposes. The doctrine of res judicata precludes the parties from relitigating any claims that were or could have been raised in the case.  See Allen v. McCurry, 449 U.S. 90, 94 (1980). Fed. R. Civ. P. 60(b) provides that the district court may relieve a party from a final judgment in five specific circumstances or for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6).  None of the five enumerated circumstances applies to Lebron's arguments.  Thus, the court will consider his arguments under the sixth subpart of the rule.  See Manning v. New York University, 299 F.3d 156, 162 (2d Cir. 2002) (reviewing district court's consideration of motion to vacate judgment under sixth subpart only), cert. denied, 538 U.S. 1035 (2003).

The relief provided under Rule 60(b) is warranted only under "extraordinary circumstances," or to prevent "extreme and undue hardship." See DeWeerth v. Baldinger, 38 F.3d 1266, 1272 (2d Cir.1994). In reviewing a motion to set aside a settlement, the court reviews the record of settlement negotiations including plaintiff's involvement in and understanding of the terms of the settlement agreement. See Manning, 299 F.3d at 161-64 (reviewing length of negotiations, plaintiff's participation in negotiations and plaintiff's understanding of terms of settlement).

Defendants have provided copies of letters comprising the settlement negotiations in this case. The negotiations covered the period from April 8, 2003, until February 9, 2004. Initially, the settlement proposals included a payment of money and Lebron's ability to obtain replacement property (for property he claims was taken from him by correction officers, but not returned) so long as the property was approved by the facility holding Lebron. Beginning in September 2003, however, the state's offers were changed to the payment of money only. The offers clearly stated that "no special property rights would be included." (See Doc. #76, Ex. D at 33, Letter dated September 15, 2003; and 44, Letter dated October 10, 2003.) Counter-offers, including the ability to obtain replacement property, were rejected. (See Doc. #76, Ex. D at 33, 44, 50, 53.) The only reference to prescription eyeglasses was in Lebron's December 2, 2003 letter. (See Doc. #76, Ex. D at 51-52.) That letter referred to prescription eyeglasses that are available through the prison commissary and approved by the Department of Correction.[3] Defendants rejected this counter-offer. In his final letter, dated January 7, 2004, Lebron agreed to the

---

[3] Lebron states that the tinted eyeglasses he seeks are "medically necessary." He has provided no evidence supporting this claim. Further, he concedes that the degree of tint exceeds the twenty percent that is allowed by the Department of Correction.

3

settlement terms proposed by defendants with the exception that he sought $2000 instead of $1500 because he would not be allowed any "property rights." (See Doc. #76, Ex. D at 54.) Thus, the court concludes that Lebron was aware that no right to any property was included in the settlement agreement. The court also concludes that Lebron has not demonstrated that the defendants misrepresented to him that he would be able to purchase glasses in excess of the tint limitation during the settlement negotiations.

As mentioned, Lebron also argues that he agreed to settle the cases under duress and without the advice of appointed counsel. Although the court had denied Lebron's several motions for appointment of counsel, Lebron states in several of the settlement letters that he was receiving legal assistance from Attorney Speyer at Inmates' Legal Assistance Program during this time. Thus, the record indicates that Lebron had some legal assistance during the settlement negotiations. Finally, it is clear from the numerous letters leading up to the settlement agreement that Lebron understood the issues and was able to negotiate intelligently.

Lebron also argues that he was "forced" to settle the case because the court issued allegedly erroneous rulings in this case. First, he argues that the case was closed improperly when the court denied his petition for writ of mandamus. The court agrees that the case should not have been closed by the clerk at that time and was reviewing that disposition when the parties filed their motion to dismiss accompanied by the settlement agreement. Because the parties had resolved the matter, there was no need for the court to reopen the case. Second, Lebron contends that the court's failure to appoint counsel prevented him from obtaining a copy of the videotape of the incident underlying his claim and would bar him from presenting evidence to support his case at trial or to oppose a motion for summary judgment. While the court also agrees that prison

rules prevent Lebron from possessing a copy of the videotape, the rules do not prevent him from viewing the tape.  In addition, Lebron does not indicate that there was any danger of the videotape being destroyed by defendants or that he had requested that Inmates' Legal Assistance Program retain a copy of the videotape on his behalf.  In addition, Lebron's most recent motion for appointment of counsel was under consideration by the court along with his communications regarding the closing of the case at the time the parties filed their settlement papers.

The court concludes that Lebron has not demonstrated extraordinary circumstances warranting relief from judgment in this case.  Accordingly, his motion to set aside the settlement is denied.   Of course, Lebron is free to challenge the DOC policy concerning the tint restriction with the correction department in another setting; it is just that the settlement of this lawsuit forecloses the claims brought in it.

In the second motion, Lebron indicated that he would withdraw all pending motions, including any objections to the settlement agreement, if defendants provide him the agreed settlement amount by February 28, 2005.  Lebron states that he should not have had to wait over a year from the settlement for the settlement amount.  The court notes that Lebron filed his motion to vacate the settlement agreement shortly after the court approved the settlement.  While this motion has been pending, defendants have not concluded the settlement.  The court assumes that defendants would not agree to Lebron's latest motion, until the court rules on the motion to vacate the settlement.  Accordingly, plaintiff's request is denied.

II.     Motion for Review of Ruling [doc. #69]

Lebron seeks review of several rulings filed in this case prior to settlement.  As indicated above, Lebron chose to settle the case while several of his motions were pending.  Thus, his

5

motion is denied as moot. In addition, the court considered and rejected many of Lebron's objections in considering his motion to vacate the settlement agreement.

III.    Motion to Consolidate [doc. #79]

Lebron asks the court to consolidate this case with Lebron v. Armstrong, et al., 3:03cv1269 (EBB). He states that the cases contain related issues and should be considered together. Because the court has declined to set aside the settlement agreement, this request is denied as moot.

IV.    Motions for Preliminary Injunction and Ruling on Pending Motions [docs. #84 & #86]

In his motion for preliminary injunction, Lebron asks the court to grant his motion for review of the previous rulings issued in this case and to order defendants to immediately pay him the settlement amount of $2000. In the second motion, he asks the court to rule on all pending motions.

Although the court has denied plaintiff's separate motion for review, it has considered many of his objections in its consideration of his motion to vacate the settlement agreement. In addition, the court has denied his motion seeking to set aside the settlement agreement in this case. Accordingly, Lebron's motion for preliminary injunction is denied. In addition, the court has ruled on all pending motions. Thus, his motion seeking such ruling is denied as moot.

V.    Conclusion

Lebron's motions to set aside and enforce the settlement [**docs. #71 & #89**] and motion for preliminary injunction [**doc. #84**] are **DENIED**. His motions for review of court decisions [**doc. #69**], to consolidate this case with Case No. 3:03cv1269(EBB) [**doc. #79**] and ruling on pending motions [**doc. #86**] are **DENIED** as moot.

All pending motions and challenges to the settlement agreement have been decided. Thus, defendants may conclude the settlement by forwarding payment to Lebron.

**SO ORDERED** at Hartford, Connecticut, this  2nd  day of March, 2005.

 /s/ CFD
Christopher F. Droney
United States District Judge